UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| TERRI NIEMIETZ, | ) |
| *Plaintiff*, | ) ) ) |
| v. | ) Civil Action No. SA-17-CV-401-XR ) |
| CITY OF CONVERSE, ET AL., | ) ) ) |
| *Defendants*. | ) ) ) |

# ORDER

On this date, the Court considered the status of the above-styled and numbered case. After careful consideration, the Court GRANTS IN PART and DENIES IN PART Defendant's Motion to Dismiss (Docket no. 11).

## BACKGROUND

Plaintiff filed her Original Complaint on May 8, 2017. Docket no. 1. Plaintiff brings causes of action pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*); the Americans with Disabilities Act of 1990 ("ADA"), as amended (42 U.S.C. § 12101 *et seq.*); the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 *et seq.*); 42 U.S.C. §§ 1981, 1981a, and 1983; and the Texas Labor Code, Chapter 21 and § 52.031. *Id.* at 1–2.

Plaintiff is a former employee of the City of Converse. She previously filed a charge of discrimination against the City of Converse Police Department ("CCPD") on or about May 16, 2016 with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 3. Plaintiff alleged discrimination based on age, race, and disability. She also complained of sexual harassment by

1

City Manager Lanny Lambert. *Id.* Plaintiff further alleged she experienced retaliation from Lambert, newly hired Police Chief Fidel Villegas, and Mayor Al Suarez in the form of a hostile work environment. *Id.* She resigned from her employment with the City. *Id.* On February 9, 2017, the EEOC issued a Notice of Right to Sue. *Id*. Plaintiff then brought this suit on May 8, 2017.

Plaintiff states she was employed by the City of Converse at the city's police department in 2007 as the first ever Communications Supervisor. *Id.* She resigned from that position with twenty-eight years of Emergency Services experience and twenty-five years of law enforcement experience. *Id.* at 4. Plaintiff alleges she experienced no employment problems with any prior employers or the City of Converse, until she complained about sexual harassment against Defendant Lambert. *Id.*

Plaintiff alleges Lambert subjected her to sexual harassment in the form of sex-based and inappropriate texts, jokes, and pictures sent to her cell phone, usually during late evening hours. *Id.* Plaintiff informed Rick Jamison, Police Chief at that time, about the communication and that she wanted it to stop, and she followed the City's policy to report the conduct, specifically reporting it to Human Resources. *Id.* Plaintiff alleges that a few days later, Lambert stated in a Directors meeting that all Directors needed to be careful about texting subordinates, but that he later told Plaintiff, "three other women in prior cities complained on me and all you get are warnings and they don't do much more." *Id.*

According to Plaintiff, Lambert ceased sending messages and texts, but she began to experience retaliation for reporting the sexual harassment. *Id.* She alleges that in October 2015, she was re-investigated for a 2012 work incident that the City previously investigated and originally "corrected with a letter of counseling" issued to Plaintiff. *Id.* at 4–5. Plaintiff alleges

2

she was cleared of any new alleged violations, but Lambert wanted to now suspend her only because of her sexual misconduct report. *Id.* Shortly thereafter, Plaintiff alleges former Chief Jamison retired because he was under duress and pressure from Lambert to suspend Plaintiff for one to two days without pay. *Id.* After Jamison's departure, Plaintiff received a written reprimand. *Id.*

At a later non-specified date, Plaintiff alleges Lambert asked her, "You ready to fight for your job?" *Id.* Plaintiff alleges Lambert escalated efforts to force her out of her job following Jamison's resignation. *Id.* Plaintiff alleges the City of Converse contacted outside organizations to outsource Plaintiff's job. *Id.* The organizations were allegedly told to not inform Plaintiff, but she learned of these facts through friends in law enforcement. *Id.* Plaintiff states this information influenced her decision to resign. *Id.* Plaintiff alleges that in 2016, many police department employees over the age of forty retired, including Plaintiff. *Id.* at 6.

Plaintiff alleges she experienced retaliation through changed work hours and denied extra income following a cancellation of a "Memorandum of Understanding between the City of Converse and Alamo Area Councils of Governments." *Id.* In April 2016, new Police Chief Fidel Villegas, hired by Lambert, arrived and stated Plaintiff's schedule would change to midnights. *Id.* Plaintiff alleges in her first meeting with Villegas, he "belittled and yelled at her with the office door open and other employees around, humiliating [her]." *Id.* Plaintiff alleges Lambert provided Villegas with information to harass, criticize, ridicule, and humiliate her. *Id.* Villegas allegedly told Plaintiff she was "nothing" and "not knowledgeable enough to teach [certain] classes." *Id.*

Plaintiff states after this meeting and "other illegal actions by Defendants," she decided to resign and told Villegas she was giving him her notice. *Id.* at 6–7. Villegas allegedly asked her to

wait "because it would look bad if she quit right after he started." *Id.* at 7. Plaintiff states the Assistant City Manager said in a meeting that Plaintiff's salary could be used to pay at least two officers instead of her, leading Plaintiff to believe "[o]bviously the City wanted her gone and they would continue to force her out." *Id.* Plaintiff turned in her written notice dated April 13, 2016, and resigned. *Id.* Plaintiff alleges the City of Converse's attempts to outsource her position ceased following her resignation. *Id.* Plaintiff alleges she was forced to forego obtaining her full retirement benefits because she could no longer tolerate the acts against her. *Id.*

Plaintiff alleges Mayor Suarez influenced the decisions of Lambert, who tasked Villegas to "make life miserable" for Plaintiff. Plaintiff states that Suarez commented that more diversity was needed in the City. *Id.* Plaintiff alleges older workers and workers "in other protected classes" were replaced by those "outside of their protected class." *Id.*

Plaintiff states her medical bills for rheumatoid arthritis treatment were "[a]nother strike against [her] continued employment" because she and older employees maxed out on the $3,700 insurance amount the City had to pay on their behalf. *Id.* at 7–8. Plaintiff alleges comments were made during insurance meetings that "older people were costing the city and needed to go." *Id.* at 8.

Plaintiff states she has been unable to secure full-time employment since she was allegedly forced to leave her position. *Id.* She alleges Defendants are "blacklisting" her because they are "vengeful and motivated by discrimination and retaliation against her since she caused problems for them." *Id.*

Plaintiff now brings claims for discriminatory retaliation, "retaliatory hostile work environment," race discrimination, age discrimination, disability discrimination, and blacklisting,

4

as well as action against Defendants Villegas, Lambert, and Suarez in their individual and official capacities. *Id.* at 9–14.

## DISCUSSION

### I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### II. Application

Plaintiff's live complaint is hard to follow in terms of which claims are being brought against which Defendants, but her Response to Defendants' Motion to Dismiss (Docket no. 14) more clearly delineates among Defendants and the allegations against them. The Court will first analyze claims against Defendants CCPD and City of Converse, then claims against individual Defendants Villegas, Lambert, and Suarez.

## A. City of Converse Police Department

Plaintiff named as Defendant the CCPD in her Original Complaint. Docket no. 1. Defendants argue that Plaintiff fails to state a valid claim against the CCPD because it is not a jural entity and lacks the legal capacity to be sued. Docket no. 11 at 9.

The "[c]apacity to sue or be sued" is governed by "the law of the state where the court is located." FED. R. CIV. P. 17(b) (3). Thus, Texas law governs on this question. To sue a city department in Texas, "[the department] must enjoy a separate legal existence," meaning that it must be "a separate and distinct corporate entity." *Darby v. Pasadena Police Dep't*, 939 F.2d 311, 313 (5th Cir. 1991) (internal citations omitted). Thus, unless the "true political entity" has explicitly "[granted] the servient agency with jural authority," it may not sue nor be sued. *Darby*, 939 F.2d at 313.

Plaintiff pleads no facts that demonstrate that the City of Converse has granted the CCPD with jural authority as a separate entity. Courts routinely dismiss claims against government departments and agencies that lack independent jural status, even when they are sued in concert with the government entity. *See, e.g.*, Order Granting Motion to Dismiss, *Hughes v. City of Schertz*, 2007 WL 3128511, at *1–2 (W.D. Tex. Sept. 28, 2007) (dismissing a city's fire department that was sued together with the city, which had reserved in its charter all powers and had not explicitly granted jural authority). As a result, Plaintiff fails to state any claim against Defendant CCPD upon which relief can be granted.

## B. Municipal Liability

Plaintiff brings claims for discriminatory retaliation, "retaliatory hostile work environment," race discrimination, age discrimination, disability discrimination, and blacklisting against the City of Converse. Docket no. 1.

1. **Discriminatory Retaliation**

Title VII prohibits employers from retaliating against employees for engaging in protected conduct, which includes filing charges of harassment or discrimination. 42 U.S.C. § 2000e–3(a); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). In her complaint, Plaintiff alleges that she was retaliated against based on her good faith opposition to the discriminatory practices of Lambert and reporting those practices to her supervisor. Docket no. 1 at 9.

Where, as here, there is no direct evidence of discrimination, courts apply the *McDonnell-Douglas* burden-shifting framework to Title VII retaliation claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 267–68 (5th Cir. 2015). To make out the prima facie case, a plaintiff must prove that (1) she engaged in conduct protected by Title VII, (2) she suffered a materially adverse action, and (3) a causal connection exists between the protected activity and the adverse action. *Jenkins*, 784 F.3d at 269 (citing *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008)).

For an employment action to be materially adverse, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). This standard "prohibit[s] employer actions that are likely to deter victims of discrimination from complaining to the EEOC, the courts, and their employers," while accounting for the fact that "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* The standard is objective, but "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at

68–69. If a plaintiff proves she suffered an adverse action, she must finally prove that a causal link existed between the protected activity and adverse action. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 489 (5th Cir. 2014), *cert. denied sub nom. Fort Bend Cty., Tex. v. Davis*, 135 S. Ct. 2804 (2015).

Defendant does not contest that Plaintiff engaged in protected conduct. Because the type of conduct protected by Title VII is broadly defined as opposition to any practice made unlawful by Title VII, *see Crawford v. Metro Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 277–78 (2009), the Court assumes Plaintiff engaged in protected activity when she reported the alleged sexual harassment.

Plaintiff alleges she experienced retaliation when she was re-investigated for a 2012 work incident, received a written reprimand following that investigation, learned the City contacted outside organizations in an attempt to outsource her job, changed work hours, denied extra income, and endured verbal harassment from Defendant Villegas. Defendants argue that Plaintiff fails to allege she suffered a materially adverse action, and that she fails to allege any causal connection.

Plaintiff alleges that she was forced to resign after facing the alleged retaliation following her harassment report. Taken together, Plaintiff sufficiently pleads she suffered a materially adverse action. She alleges actions that might have dissuaded a reasonable worker from making or supporting a charge of discrimination. Plaintiff, however, fails to sufficiently allege that a causal connection exists between any materially adverse action and her harassment report.

Temporal proximity "between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir. 2015). The Fifth Circuit has accepted gaps of

about two months as sufficiently close to support an inference of a causal link. *Richard v. Cingular Wireless LLC*, 233 F. App'x. 334, 338 (5th Cir. 2007); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that "a time lapse of up to four months has been found sufficient"); *see Stroud v. BMC Software, Inc.*, 2008 WL 2325639, at *6 (5th Cir. June 6, 2008) (noting a five-month lapse, by itself, does not support an inference on a causal link, but two and a half months is short enough); *cf. Barkley v. Singing River Electric Power Ass'n*, 433 F. App'x 254, 260 n.10 (5th Cir. 2011) (noting the Supreme Court has cited cases finding three and four month gaps insufficient). Plaintiff alleges she was re-investigated for the 2012 incident in October 2015, two months after she complained of sexual harassment in August 2015. The written reprimand seemingly came in January 2016, some five months after Plaintiff's report. Plaintiff alleges no date for when the City allegedly attempted to outsource her job—an outsourcing the City intended to not tell Plaintiff about—which was never carried out, nor does she allege a date for when she was allegedly denied extra income. Plaintiff finally alleges Chief Villegas changed her work hours and verbally harassed her in April 2016, ten months after her report.

Although the first alleged action occurs two months after Plaintiff's report, the temporal proximity alone of the events leading up to Plaintiff allegedly being forced to resign fails to support an inference of a causal link. Plaintiff fails to state additional facts to establish a causal link, particularly given that she received a written reprimand and no suspension, the attempted outsourcing never took place, she alleged no date or clear actor with respect to the denied extra income, and she alleges no connection between the subject matter of the verbal assault and her report.

In sum, because the Court finds that Plaintiff does not allege facts on all of the necessary elements of her discriminatory retaliation claim, Plaintiff fails to state a claim upon which relief can be granted.

### 2. Retaliatory Hostile Work Environment

Plaintiff states a claim for "retaliatory hostile work environment." Docket no. 1 at 9–10. It is unclear, however, as to whether Plaintiff intends to bring an additional claim for retaliation, or a claim for hostile work environment. Although Defendants ask the Court to dismiss all claims against Defendants, Docket no. 11 at 2, Plaintiff alleges that Defendants' Motion to Dismiss does not specifically address Plaintiff's claim for retaliatory hostile work environment. Docket no. 14 at 2.

Given the lack of clarity relating to both Plaintiff's actual claim and Defendants' Motion to Dismiss, the Court requests the parties to prepare to clarify the claim and motion to dismiss at the upcoming status conference on Thursday, September 28.

### 3. Section 1983 Race Discrimination

Under 42 U.S.C. § 1983, a claim of municipal liability "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). There is no *respondeat superior* liability for a municipality under Section 1983. *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 690. The unconstitutional conduct must be "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. The municipal's policy or custom must cause the

employee to violate a person's constitutional rights. *Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992).

Plaintiff alleges that because Defendants discriminated against her based on race as a white individual, they denied her equal protection under the law. Docket no. 1 at 10. Defendants argue that Plaintiff fails to allege a formally adopted policy or custom that caused a violation of her constitutional rights. Docket no. 11 at 5.

Plaintiff states that the City of Converse discriminated against her because Mayor "Al Suarez (Hispanic) commented more diversity was needed among the City's employees," and thereafter, employees were forced to resign or prematurely retire and were replaced by others "historically considered minorities." Docket no. 1 at 10. Although Plaintiff alleges the municipality's conduct was at fault, she fails to allege any official City policy or custom. Plaintiff only claims that employees, unidentified by race, left their positions after Mayor Suarez made comments about needing more diversity. Comments do not rise to the level of official policy that Plaintiff must allege, nor are comments sufficient to indicate a "persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). Accordingly, Plaintiff fails to state a claim for race discrimination under Section 1983 upon which relief can be granted.

4. **Title VII Race Discrimination**

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or

11

privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a) (2012). Plaintiffs may establish claims of race discrimination through either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). When a plaintiff relies on circumstantial evidence, as Plaintiff does here, the plaintiff may establish a prima facie case by showing she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

Plaintiff alleges Defendants discriminated against her based on race as a white individual, and "employees of the city were forced to resign or prematurely retire and were replaced by those historically considered minorities." Docket no. 1 at 10. Plaintiff sufficiently pleads the first three elements: she is a white individual, was qualified for her position, and experienced an adverse employment action by allegedly being forced to resign. Plaintiff, however, fails to allege that she was replaced by someone outside of the protected class. Although Plaintiff states that other employees were replaced by those historically considered minorities, Plaintiff never alleges *she* was replaced by someone outside of her protected class. Nor does she allege that other similarly situated employees were treated more favorably. Accordingly, Plaintiff fails to state a claim for race discrimination under Title VII upon which relief can be granted.

5. **Age Discrimination**

Under the ADEA, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove a disparate treatment claim pursuant to

the ADEA, "[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177–78 (2009); *see also Cervantez v. KMGP Servs., Co. Inc.*, 349 F. App'x 4 (5th Cir. 2009).

In general, to establish a prima facie case of age discrimination, a plaintiff must demonstrate: (1) she belongs to the protected group of persons over the age of forty; (2) was qualified for her position; (3) was discharged; and (4) was replaced with someone younger or outside the protected group. *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 8 (5th Cir. 2009).

Plaintiff alleges Defendants forced her and other older employees to resign or prematurely retire, after which they were replaced by younger employees. Docket no. 1 at 10–11. Although Plaintiff resigned from her position, she claims she was constructively discharged, despite her qualifications and experience in the position. Plaintiff specifically alleges she was replaced by someone younger with no prior dispatch knowledge of experience. Docket no. 1 at 8. At this stage in the case, Plaintiff sufficiently states a claim for age discrimination upon which relief can be granted.

### 6. Disability Discrimination

Under the ADA, it is unlawful to discriminate against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

In general, to establish a prima facie case of disability discrimination, a plaintiff must demonstrate: (1) she has a disability; (2) she is an individual qualified for the job in question; (3) despite her qualifications, she suffered an adverse employment action; and (4) that a member of

another class who was similarly-situated was treated more favorably. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001); *McKay v. Johanns*, 265 F. App'x. 267, 268 (5th Cir. 2008). The term "disability" includes "being regarded as having such an impairment (as described in paragraph (3))." 42 U.S.C. § 12102(1). An individual meets the requirement of "being regarded as having such an impairment" if the individual "establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." *Id.* § 12102(3).

Plaintiff alleges Defendants discriminated against her in the terms and conditions of her employment based on her disability of rheumatoid arthritis. Docket no. 1 at 11. Defendants argue that Plaintiff fails to allege she was regarded as having an impairment because she fails to assert facts to establish that City officials knew of her rheumatoid arthritis prior to her resignation. Docket no. 11 at 14.

Plaintiff only makes conclusory statements that Defendants regarded her rheumatoid arthritis as disabling her. She does not allege that Defendants even knew about her rheumatoid arthritis, much less that they forced her to resign because they perceived her as being disabled. By stating that she maxed out on her insurance and some unidentified individuals commented during insurance meetings that older people costing the City more needed to go, Plaintiff does not meet her burden to show she is entitled to relief on a claim for disability discrimination. Accordingly, Plaintiff fails to state a claim for disability discrimination upon which relief can be granted.

### 7. Blacklisting

Plaintiff alleges that Defendants blacklisted her by intending to prevent her from engaging in or securing employment with another. Docket no. 1 at 14. A person commits an offense under Texas Labor Code § 52.031 if the person: (1) blacklists or causes to be blacklisted an employee; or (2) conspires or contrives by correspondence or any other manner to prevent an employee discharged by a corporation, company, or individual from procuring employment. TEX. LAB. CODE § 52.031. As Plaintiff states, Defendants do not move to dismiss the blacklisting claim against Defendant City of Converse. Accordingly, Plaintiff's Section 52.031 claim against Defendant City of Converse survives.

### 8. Texas Labor Code § 21.051

Plaintiff alleges, albeit generally, claims based on Section 21.051 of the Texas Labor Code. Under Section 21.051:

> an employer commits an unlawful employment practice if because of race, color, disability, religion, sex, national origin, or age the employer: (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE § 21.051. Plaintiff's claims appear to be wrapped up with allegations similar to those under Title VII, the ADA, the ADEA, and § 1983, as discussed above. Defendants, however, do not move to dismiss Plaintiff's Section 21.051 claims, and instead only specifically move to dismiss the federal claims. Accordingly, at this time Plaintiff's Section 21.051 claims survive. Given the similarity between the federal and state claims of discrimination, the Court

requests Defendants clarify to the Court if they intend to move to dismiss the state law claims at the status conference scheduled on Thursday, September 28.

### C. Defendants Villegas, Lambert, and Suarez in their Individual Capacity

Plaintiff named as Defendants Villegas, Lambert, and Suarez in their individual capacities. Docket no. 1. Plaintiff alleges these three Defendants intentionally deprived her of equal protection of the laws and discriminated against her on the basis of race, as well as deprived her of her rights, privileges, and immunities secured by Title VII, the ADA, and the ADEA. *Id.* at 13. Plaintiff also alleges Defendants Villegas, Lambert, and Suarez blacklisted her, intending to prevent her from engaging in or securing employment with another. *Id.* at 13–14.

#### 1. Title VII, ADA, and ADEA Claims

Defendants first argue that Plaintiff's claims under Title VII, the ADA, and the ADEA should be dismissed because these Defendants are not employers, and there is no individual liability for employees under these statutes. Docket no. 11 at 7–9. Plaintiff agrees she cannot raise claims under Title VII, the ADA, and the ADEA against the individual Defendants in their individual capacities. Docket no. 14 at 5. Accordingly, Plaintiff fails to state a claim against Defendants Villegas, Lambert, and Suarez in their individual capacities under Title VII, the ADA, and the ADEA.

#### 2. Blacklisting Claim

Plaintiff also brings a blacklisting claim against Defendants Villegas, Lambert, and Suarez in their individual capacity. As with the blacklisting claim against Defendant City of Converse, Defendants do not move to dismiss the blacklisting claim against the individual Defendants. Plaintiff's Section 52.031 claim against Defendants Villegas, Lambert, and Suarez in their individual capacity survives.

### 3. Section 1983 Claim

Defendants also argue that Plaintiff's equal protection claim should be dismissed by raising the defense of qualified immunity. After a defendant asserts qualified immunity as a defense, the burden is on the plaintiff to negate qualified immunity. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). To determine if a plaintiff meets this burden, courts conduct a two-step inquiry. "First, [a plaintiff] must claim that the defendants committed a constitutional violation under current law. Second, [s]he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (internal citations omitted).

First, Plaintiff sufficiently alleges a constitutional violation by bringing a claim for racial discrimination that deprived her of equal protection under the law. Under 42 U.S.C. § 1981, Plaintiff may bring a claim for employment discrimination. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ("Section 1983 provides an explicit remedy in damages which, with its limitations on municipal liability, Congress thought 'suitable to carry . . . into effect' the rights guaranteed by § 1981 as against state actors.") (citation omitted). Thus, Plaintiff alleges a violation of a clearly established constitutional right.

Second, Plaintiff does not sufficiently allege that Defendants' actions were objectively unreasonable in light of the law clearly established at the time of those alleged actions. Even taking all of Plaintiff's allegations as true and construing those facts favorably to Plaintiff, she fails to meet the pleading standard to defeat a qualified immunity defense. Plaintiff does not allege Defendants fired her because of her race, nor that other employees were fired or forced to retire because of their race. *See Lott v. Kenedy Indep. Sch. Dist.*, 2009 WL 2843367, at *2 (W.D.

Tex. Aug. 31, 2009) (denying motion to dismiss where plaintiff sufficiently alleged defendants "voted against contract renewal because Lott is white/Anglo and the trustees are Hispanic"). Instead, Plaintiff merely states that Mayor Suarez commented that more diversity was needed in the City, and later that workers in protected classes were replaced by those "outside of their protected class." Plaintiff makes the conclusory allegation that Defendants took "adverse action" against Plaintiff "because of her race." To survive her heightened pleading requirements, Plaintiff must plead with "'factual detail and particularity,' not mere conclusionary allegations." *Anderson v. Pasadena Indep. Sch. Dist.*, 184 F.3d 439, 443 (5th Cir. 1999); *Jackson v. Widnall*, 99 F.3d 710, 715–16 (5th Cir. 1996). By only pointing to one Defendant's comments and relying on a conclusory allegation, Plaintiff fails to allege objectively unreasonable actions carried out by Defendants that would violate a clearly established constitutional right.

Because of the foregoing analysis, the Court need not consider Defendants' argument that Plaintiff may not bring a Section 1981 claim against Mayor Suarez as an elected official. Accordingly, Plaintiff fails to state a Section 1983 claim for race discrimination against Defendants Villegas, Lambert, and Suarez in their individual capacities upon which relief can be granted.

### D. Defendants Villegas, Lambert, and Suarez in their Official Capacity

Plaintiffs also named Defendants Villegas, Lambert, and Suarez in their official capacity. Docket no. 1. Defendants argue all official capacity claims should be dismissed because official capacity suits only impose liability on the entity the official represents, and given the City of Converse is a named Defendant, the claims against Defendants Villegas, Lambert, and Suarez in their official capacity are redundant. Docket no. 11 at 9.

Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n. 55 (1978). In *Kentucky v. Graham*, the Supreme Court held "[t]here is no longer a need to bring official capacity actions against local government officials [because] under *Monell* . . . local government units can be sued directly." 473 U.S. 159, 165, 167 n. 14 (1985). Plaintiff fails to proffer any relief that can be granted with her official-capacity claims that cannot be obtained with the claims made against Defendant City of Converse. Accordingly, it is appropriate to dismiss the official-capacity claims against Defendants Villegas, Lambert, and Suarez as redundant. *See Sanders–Burns v. City of Plano*, 594 F.3d 366, 373 (5th Cir. 2010) (noting that plaintiff's § 1983 claims against a government entity "render[ed] any official capacity claim against [an employee of that entity] redundant"); *Castro Romero v. Becken*, 256 F.3d 349, 355 (5th Cir. 2001) (dismissing as duplicative allegations against municipal officers in their official capacities where the plaintiff also brought claims against the government entity). The Court therefore dismisses Plaintiff's official-capacity claims against Defendants Villegas, Lambert, and Suarez.

## CONCLUSION

In her Response to Defendant's Motion to Dismiss, Plaintiff requests the opportunity to amend her Original Complaint and replead to address any deficiencies noted by the Court. Docket no. 14 at 4.

Defendant's Motion to Dismiss (Docket no. 11) is hereby GRANTED IN PART and DENIED IN PART. Plaintiff's claims against City of Converse Police Department are DISMISSED WITH PREJUDICE. Plaintiff's claims against City of Converse for age discrimination under the ADEA, Blacklisting, and under Texas Labor Code § 21.051 survive,

19

and all other claims against City of Converse are DISMISSED WITHOUT PREJUDICE. Plaintiff's claim against Villegas, Lambert, and Suarez for blacklisting survives, and all other claims against Villegas, Lambert, and Suarez in their individual capacity are DISMISSED WITHOUT PREJUDICE. Plaintiff's claims against Villegas, Lambert, and Suarez in their official capacity are DISMISSED WITH PREJUDICE. The Court requests the parties to prepare to clarify the "retaliatory hostile work environment" claim and motion to dismiss at the upcoming status conference on Thursday, September 28.

It is so ORDERED.

SIGNED this 25th day of September, 2017.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE