# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

TERRI J NIEMIETZ,                          §
                                           §
        *Plaintiff,*                       §
                                           §
*v.*                                       §        Civil Action No.  SA-17-CV-401-XR
                                           §
CITY OF CONVERSE, ET AL.,                  §
                                           §
        *Defendants.*                      §
                                           §
                                           §

## ORDER

On this date, the Court considered the status of the above-styled and numbered case. After careful consideration, the Court GRANTS IN PART and DENIES IN PART Defendants' Motion to Dismiss. Docket no. 27.

## BACKGROUND

Plaintiff filed her Original Complaint on May 8, 2017. Docket no. 1. At an oral hearing on September 28, 2017, the Court granted Plaintiff's Motion to Amend Complaint, and on October 6, 2017, Plaintiff filed her Amended Complaint. Docket no. 26.

Plaintiff brings causes of action pursuant to Title VII of the Civil Rights Act of 1964, as amended (42 U.S.C. § 2000e *et seq.*); the Age Discrimination in Employment Act ("ADEA") (29 U.S.C. § 621 *et seq.*); 42 U.S.C. §§ 1981, 1981a, and 1983; and the Texas Labor Code, Chapter 21 and § 52.031. *Id.* at 1.

Plaintiff is a former employee of the City of Converse. She previously filed a charge of discrimination against the City of Converse Police Department ("CCPD") on May 16, 2016, with the Equal Employment Opportunity Commission ("EEOC"). *Id.* at 2. Plaintiff alleged

discrimination based on age, race, and disability. *Id.* She also complained of sexual harassment by City Manager Lanny Lambert. *Id.* Plaintiff further alleged she experienced retaliation from Lambert, newly hired Police Chief Fidel Villegas, and Mayor Al Suarez in the form of a hostile work environment that allegedly resulted in her resignation from the City of Converse. *Id.* On February 9, 2017, the EEOC issued a Notice of Right to Sue. *Id.* Plaintiff then brought this suit on May 8, 2017.

Plaintiff states she was employed by the City of Converse at the city's police department in 2007 as the first ever Communications Supervisor. *Id.* at 3. She resigned from that position with twenty-eight years of Emergency Services experience and twenty-five years of law enforcement experience. *Id.* Plaintiff alleges she experienced no employment problems with any prior employers or the City of Converse, until she complained about sexual harassment against Defendant Lambert. *Id.*

Plaintiff alleges Lambert subjected her to sexual harassment in the form of sex-based and inappropriate texts, jokes, and pictures sent to her cell phone, usually during late evening hours. *Id.* Plaintiff informed Rick Jamison, Police Chief at that time, about the communication and that she wanted it to stop, and she followed the City's policy to report the conduct, specifically reporting it to Human Resources. *Id.* Plaintiff alleges that a few days later, Lambert stated in a Directors meeting that all Directors needed to be careful about texting subordinates, but that he later told Plaintiff, "three other women in prior cities complained on me and all you get are warnings and they don't do much more." *Id.*

According to Plaintiff, Lambert ceased sending messages and texts, but she began to experience retaliation for reporting the sexual harassment. *Id.* at 4. Plaintiff alleges that a female,

Hispanic employee was assigned to the police department in August 2015 after being transferred between City departments "because of behavior and performance issues." *Id.* Plaintiff states this employee "had a prior history of also complaining about" Plaintiff, and the employee became an employee in Plaintiff's department after Plaintiff complained about Lambert's sexual harassment. *Id.*

Plaintiff alleges that in October 2015, she was re-investigated for a 2012 work incident that the City previously investigated. *Id.* Plaintiff alleges this investigation came about as a result of the newly assigned employee in Plaintiff's department complaining about Plaintiff. *Id.* Plaintiff alleges the employee was upset "about being removed from a warrant job back to patrol shift work." *Id.* Plaintiff states that Lambert hired the same law firm used in 2012 to investigate the complaint against her to re-investigate the same issue, as he was "determined to inflict punishment" on Plaintiff. *Id.*

Plaintiff requested administrative leave during the investigation, but leave was denied three times. *Id.* Plaintiff alleges she was forced to work with the employee who complained against her. *Id.* Plaintiff states no violation was found against her, "except that [Plaintiff] cussed during the investigation." *Id.* Plaintiff was allegedly asked by the investigator what language was used in 2012, and she repeated it and was told she was unprofessional for cussing. *Id.*

In December 2015, Plaintiff was cleared of any new alleged violations, but she alleges Lambert still wanted to punish her. *Id.* Plaintiff alleges the circumstances between 2012 and 2015 only changed because Plaintiff reported Lambert's alleged sexual harassment. *Id.* at 5.

Shortly thereafter, Plaintiff alleges former Chief Jamison retired because he was under duress and pressure from Lambert to suspend Plaintiff for one to two days without pay based on

the re-investigation of Plaintiff's 2012 actions brought forward by the department's new employee. *Id.* After Jamison's departure, Plaintiff received a written reprimand. *Id.* Plaintiff states that at the meeting regarding the discipline, Lambert stated, "I got out of the investigation what I wanted." *Id.*

At some point during September-October 2015, Plaintiff alleges Lambert asked her, "You ready to fight for your job?" *Id.* Plaintiff alleges Lambert escalated efforts to force her out of her job following Jamison's resignation. *Id.* Plaintiff alleges the City of Converse contacted outside organizations to outsource Plaintiff's job. *Id.* at 6. The organizations were allegedly told to not inform Plaintiff, but she learned of these facts through friends in law enforcement. *Id.* Plaintiff states this information influenced her decision to resign. *Id.* Plaintiff alleges that in 2016, many department employees over the age of forty retired, including Plaintiff. *Id.* at 6.

In February 2016, Plaintiff alleges the interim police chief/assistant city manager changed the dispatch schedule without notice to Plaintiff without properly notifying supervisors of the change. *Id.* Plaintiff was allegedly informed of the change on February 28, 2016, by one of the dispatchers, not by the interim chief. *Id.*

In a department meeting on March 28, 2016, a rumor about closing the dispatch department was allegedly raised, and new Police Chief Fidel Villegas confirmed it was being considered. *Id.* Plaintiff was out of town when the meeting took place. *Id.* Plaintiff states that she received "four telephone calls that evening from dispatch personnel asking if they needed to start looking for new jobs" and that "all this information influenced her ultimate decision to resign." *Id.* Plaintiff alleges that after her resignation, the City ceased in its attempt to outsource the 911 Operations Center. *Id.*

In April 2016, Chief Villegas, hired by Lambert, said that Plaintiff's schedule would change to midnights. *Id.* at 7. Plaintiff alleges in her first meeting with Villegas, he "belittled and yelled at her with the office door open and other employees around, humiliating [her]." *Id.* Plaintiff alleges Lambert provided Villegas with information to harass, criticize, ridicule, and humiliate her. *Id.* Villegas allegedly told Plaintiff she was "nothing" and "not knowledgeable enough to teach [certain] classes" and her "teaching days were over." *Id.* Plaintiff states Villegas called her into his office later that same day and harassed her for another hour about her work. *Id.* Given that Villegas was "new to the department" and "this was his first day meeting [her]," Plaintiff questions how Villegas would know aspects about her work or the department's turnover rate, unless Lambert "hired him and provided his biased, incorrect viewpoint" about Plaintiff. *Id.*

Plaintiff states that a few days after her April 6, 2016, meeting with Villegas, the Assistant City Manager met with Command Staff, and Plaintiff and other staff members gave reasons not to close Dispatch. *Id.* Plaintiff alleges the Assistant City Manager "looked directly at [Plaintiff] and stated they needed the money from her communication division to cover some of the positions in the Police Department that had been shorted over the years." *Id.* The Assistant City Manager allegedly told everyone present what Plaintiff was being paid and what one telecommunicator cost the city each year. *Id.* at 7–8. The Assistant City Manager allegedly said that with just Plaintiff's salary, "the City could fund two more police officers." *Id.* at 8.

After enduring alleged retaliatory actions and other "illegal actions by all Defendants," Plaintiff turned in her written notice dated April 13, 2016, and resigned. *Id.* Plaintiff alleges the City of Converse's attempts to outsource her position ceased following her resignation. *Id.* at 9.

Plaintiff states she planned to continue working for the City for at least two more years, but she "could not ignore the discrimination and retaliation, which Villegas obviously planned to continue against her." *Id.* Plaintiff alleges she was forced to forego obtaining her full retirement benefits because she could no longer tolerate the acts against her. *Id.*

Plaintiff alleges Mayor Suarez influenced the decisions of Lambert, who tasked Villegas to "make life miserable" for Plaintiff. *Id.* Plaintiff states that Suarez commented that more diversity was needed in the City. *Id.* Plaintiff alleges older workers and workers "in other protected classes" were replaced by those "outside of their protected class." *Id.*

Plaintiff alleges comments were made during insurance meetings that "older people were costing the city and needed to go." *Id.* Plaintiff alleges that after her forced resignation, her duties were assigned to a younger male with no prior dispatch knowledge or experience. *Id.* She further alleges that "[o]ther former White employees were replaced at the city by Hispanic or African American employees." *Id.* Plaintiff states that the "most recent employee performing as the Communication Supervisor is a younger, less experienced female whom the City is paying less than the City paid [Plaintiff]." *Id.*

Plaintiff states she has been unable to secure full-time employment since she was allegedly forced to leave her position. *Id.* at 10. She alleges Defendants are "blacklisting" her because they are "vengeful and motivated by discrimination and retaliation against her since she caused problems for them." *Id.*

Plaintiff now brings claims for discriminatory retaliation, retaliatory and discriminatory hostile work environment, race discrimination, age discrimination, and blacklisting. *Id.* at 10–19.

On October 20, 2017, Defendants filed a Motion to Dismiss for failure to state a claim. Docket no. 27.

## DISCUSSION

### I. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to the relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Assoc.*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a 12(b)(6) motion, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### II. Plaintiff's Claims Against the City of Converse

Plaintiff brings claims for discriminatory retaliation, retaliatory and discriminatory hostile work environment, race discrimination, age discrimination, and blacklisting against the City of Converse. Defendants argue that Plaintiff's claims should be dismissed for failure to state a claim.

## A. Discriminatory Retaliation

Plaintiff alleges that the city of Converse discriminated and retaliated against her "in the terms and conditions of her employment based on her good faith opposition to the discriminatory practices" of Lambert and reporting of those practices which she "reasonably believed were sexual harassment and were in violation of the law." Docket no. 26 at 10–11. Plaintiff states that she stopped fighting under the "intolerable, continuous circumstances of harassment created by the City and resigned in April 2016." *Id.* at 11.

Title VII prohibits employers from retaliating against employees for engaging in protected conduct, which includes filing charges of harassment or discrimination. 42 U.S.C. § 2000e–3(a); *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 325 (5th Cir. 2002). Where, as here, there is no direct evidence of discrimination, courts apply the *McDonnell-Douglas* burden-shifting framework to Title VII retaliation claims. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Jenkins v. City of San Antonio Fire Dep't*, 784 F.3d 263, 267–68 (5th Cir. 2015). To make out the prima facie case, a plaintiff must prove that (1) she engaged in conduct protected by Title VII, (2) she suffered a materially adverse action, and (3) a causal connection exists between the protected activity and the adverse action. *Jenkins*, 784 F.3d at 269 (citing *Aryain v. Wal–Mart Stores Tex. LP*, 534 F.3d 473, 484 (5th Cir. 2008)).

For an employment action to be materially adverse, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations omitted). This standard "prohibit[s] employer actions that are likely to deter

victims of discrimination from complaining to the EEOC, the courts, and their employers," while accounting for the fact that "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Id.* The standard is objective, but "the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters." *Id.* at 68–69. If a plaintiff proves she suffered an adverse action, she must finally prove that a causal link existed between the protected activity and adverse action. *Davis v. Fort Bend Cty.*, 765 F.3d 480, 489 (5th Cir. 2014), *cert. denied sub nom. Fort Bend Cty., Tex. v. Davis*, 135 S. Ct. 2804 (2015).

Plaintiff sufficiently alleges that she engaged in conduct protected by Title VII. The type of conduct protected by Title VII is broadly defined as opposition to any practice made unlawful by Title VII. *See Crawford v. Metro Gov't of Nashville and Davidson County, Tenn.*, 555 U.S. 271, 277–78 (2009). Plaintiff alleges that Lambert subjected her to sexual harassment in the form of sex-based, inappropriate texts, jokes, and pictures sent by phone, and that she subsequently reported this alleged harassment. Plaintiff sufficiently alleges conduct protected by Title VII.

Plaintiff also alleges she suffered a materially adverse employment action. Plaintiff alleges she was re-investigated for a 2012 work incident, required to work with a "known problem employee" who complained against her, learned the City contacted outside organizations in an attempt to outsource her job, had her work hours changed, was denied extra income, and endured verbal harassment from Defendant Villegas. Plaintiff alleges that she was forced to resign after facing the alleged retaliation following her harassment report. Taken together, Plaintiff sufficiently pleads she suffered a materially adverse action by being forced to

resign. She alleges actions that might have dissuaded a reasonable worker from making or supporting a charge of discrimination.

Finally, Plaintiff sufficiently alleges a causal connection between the materially adverse action and her harassment report. Temporal proximity "between protected activity and alleged retaliation is sometimes enough to establish causation at the prima facie stage." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir. 2015). The Fifth Circuit has accepted gaps of two to four months as sufficiently close to support an inference of a causal link. *Richard v. Cingular Wireless LLC*, 233 F. App'x. 334, 338 (5th Cir. 2007); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (noting that "a time lapse of up to four months has been found sufficient"); *see Stroud v. BMC Software, Inc.*, 2008 WL 2325639, at *6 (5th Cir. June 6, 2008) (noting a five-month lapse, by itself, does not support an inference on a causal link, but two and a half months is short enough); *cf. Barkley v. Singing River Electric Power Ass'n*, 433 F. App'x 254, 260 n.10 (5th Cir. 2011) (noting the Supreme Court has cited cases finding three and four month gaps insufficient).

Although Plaintiff alleges she complained of sexual harassment in August 2015, some eight months prior to her constructive discharge in April 2016, Plaintiff alleges she experienced continuing acts of discriminatory retaliation over that time period. Defendants argue that Plaintiff fails to allege sufficient facts to demonstrate a causal connection, including a lack of definite dates related to certain actions. Plaintiff, however, states that she reported the harassment in August 2015, that the new employee who caused Plaintiff problems was reassigned to Plaintiff's department in August 2015, that she was re-investigated for the 2012 incident in October 2015 as a result of the new employee's complaint, the City contacted outside organizations to outsource

Plaintiff's job in Fall 2015, she received a written reprimand in February 2016, her schedule was changed without notice in February 2016, and the City ceased its attempt to outsource her job following her resignation in April 2016. At this stage, Plaintiff sufficiently alleges a causal connection by showing continued retaliation from August 2015 to April 2016. Accordingly, Plaintiff states a valid claim for discriminatory retaliation against the City of Converse.

## B. Retaliatory and Discriminatory Hostile Work Environment

Plaintiff alleges the City created a hostile work environment because of her age, race, and in retaliation for her engaging in protected activity.

### 1. Retaliation Based on Age Discrimination

To establish a hostile work environment claim based on age discrimination, Plaintiff must show she (1) was over the age of 40; (2) was subjected to harassment, through either words or actions, based on age; (3) which created an objectively intimidating, hostile, or offensive work environment; and (4) there is some basis for the employer's liability. *See Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). To satisfy the third element, Plaintiff must "demonstrate that the harassment was objectively unreasonable." *Id.* "A workplace environment is hostile when it is 'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter the conditions of the victim's employment.'" *Id.* (citing *Alaniz v. Zamora–Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)). Not only must Plaintiff perceive the environment to be hostile, but it must appear hostile or abusive to a reasonable person. *Id.* To determine if conduct is objectively offensive, a court must consider the totality of the circumstances, including: "(1) the frequency of the discriminatory conduct; (2) its severity; (3)

whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance." *Id.*

Plaintiff alleges that she was forty-five years old at the time of her employment with the City. Docket no. 26 at 17. Plaintiff also alleges that during insurance meetings, "comments were made that the older people were costing the city and needed to go." Plaintiff, however, fails to demonstrate that these comments created an "objectively intimidating, hostile, or offensive work environment." As Defendants argue, Plaintiff does not allege who actually made these comments, which prevents Plaintiff from showing that there is some basis for employer's liability. Plaintiff also fails to indicate how frequent these comments were made, how severe they were, or state any facts that indicate these comments were more than "merely an offensive utterance." Accordingly, Plaintiff fails to state a claim for hostile work environment based on age discrimination.

### 2. Retaliation Based on Race Discrimination

To establish a hostile work environment claim based on race discrimination under Title VII, Plaintiff must establish a prima facie case that (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) that the City knew or should have known of the harassment and failed to take prompt remedial action. *Carrera v. Commercial Coating Servs. Int'l, Ltd.*, 422 F. App'x 334, 337 (5th Cir. 2011) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). To affect a term or condition of employment, harassment must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S.

17, 21 (1993). This determination requires that a court apply a "totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 347 (5th Cir. 2007) (internal quotation marks and citations omitted).

Plaintiff alleges that she is white. Docket no. 26 at 10. Plaintiff alleges that Mayor Suarez "commented more diversity was needed in the City." *Id.* at 9. As Defendants argue, Plaintiff does not indicate to whom this one comment was made. Further, Plaintiff does not show how this single comment about desired diversity rises to the level of unwelcome harassment. The Supreme Court has consistently held that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 328 (5th Cir. 2004) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). Plaintiff fails to state any facts that indicate the one comment about diversity is anything more than an isolated incident that does not create an abusive working environment. Accordingly, Plaintiff fails to state a claim for hostile work environment based on race discrimination.

### 3. Retaliation for Engaging in Protected Activity

Plaintiff alleges that the City created a hostile work environment because of her report of and opposition to Lambert's alleged sexual harassment. Defendants argue that the Fifth Circuit has not expressly recognized a cause of action for retaliatory hostile work environment.

In *Bryan v. Chertoff*, the Fifth Circuit considered Plaintiff's request that a claim for retaliatory hostile work environment be recognized. *Bryan v. Chertoff*, 217 F. App'x 289, 293

(5th Cir. 2007). Although the district court held that no such cause of action exists, the Fifth Circuit found that it need not decide whether to recognize a claim for retaliatory hostile work environment because Plaintiff could not establish a prima facie case for such a claim. *Id.* The Fifth Circuit, thus, did not expressly hold that a claim for retaliatory hostile work environment does not exist. Rather, the court analyzed how the plaintiff failed to meet the elements of a prima facie case for a hostile work environment, including that the employee was subject to unwelcome harassment and that the employer should have known about the harassment. *Id.* at 293–94. The Fifth Circuit similarly did not outright reject a retaliatory hostile work environment claim in *Fallon v. Potter*, but the court instead held that the plaintiff failed to present a genuine issue of fact as to causation for the retaliatory hostile work environment. *Fallon v. Potter*, 277 F. App'x 422, 426–28 (5th Cir. 2008).

Other district courts have recognized a claim for retaliatory hostile work environment. In *Rowe v. Jewell*, the court noted that several other Courts of Appeals have recognized a cause of action for retaliatory hostile work environment. *Rowe v. Jewell*, 88 F. Supp. 3d 647, 673 (E.D. La. 2015). The court held that "[g]iven the lack of a definitive decision from the Fifth Circuit, this court will assume, as other district courts in this circuit have done, that [the plaintiff] has a cause of action for a retaliatory hostile work environment." *Id.* In *Tejada v. Travis Ass'n for Blind*, the court similarly held that the plaintiff could pursue a claim of retaliatory hostile work environment, despite the fact that the Fifth Circuit has not expressly recognized such a claim. *Tejada v. Travis Ass'n for Blind*, No. A-12-CV-997-DAE, 2014 WL 2881450, at *3 (W.D. Tex. June 25, 2014), *adopted sub nom.*, No. 1:12-CV-997-DAE, 2014 WL 4165370 (W.D. Tex. Aug. 7, 2014), *aff'd*, 617 F. App'x 325 (5th Cir. 2015).

In *Tejada*, the court noted that in *Fallon*, the Fifth Circuit "did not balk at the district judge using that same standard used for retaliation claims to analyze a retaliatory hostile work environment claim." *Id.* (citing *Fallon*, 277 F. App'x 422). The *Tejada* court further noted that other circuits that have recognized a claim for retaliatory hostile work environment have taken a similar approach. *See, e.g.*, *Morris v. Oldham Cnty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000) (stating that the prima facie elements for the retaliatory hostile work environment claim are a modified version of the elements recognized in a typical retaliation claim).

Although the Fifth Circuit has yet to expressly recognize a claim for retaliatory hostile work environment, this Court recognizes that the Fifth Circuit has not rejected other district courts recognizing such a claim, and that other Courts of Appeals have recognized this type of claim. Accordingly, this Court finds that Plaintiff can bring a claim for retaliatory hostile work environment. To establish a hostile work environment claim based on retaliation, Plaintiff must establish a prima facie case that: (1) she engaged in protected activity; (2) she was subjected to unwelcomed harassment; (3) there is a causal connection between the harassment and protected activity; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action. *See Tejada*, 2014 WL 2881450, at *3; *see also Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).

As discussed above, Plaintiff sufficiently alleges that she engaged in protected activity under Title VII when she reported Lambert's alleged sexual harassment. Plaintiff also sufficiently alleges that she was subjected to unwelcome harassment by alleging, among other things, that the City assigned an employee with a history of complaining against Plaintiff to work

with her, she was suddenly re-investigated for an incident from three years before, and Villegas belittled and yelled at her. Plaintiff also sufficiently alleges that there is a causal connection between the harassment and her report because, as discussed above, the harassment allegedly occurred on a continuing basis for the eight months following Plaintiff's report. Plaintiff also sufficiently alleges that the harassment affected her employment because the harassment allegedly forced Plaintiff to resign from her position. Finally, Plaintiff sufficiently alleges the City knew or should have known of the harassment but failed to take prompt remedial action because she alleges many actions and employment decisions carried out by the City's Mayor, City Manager, and Sheriff. At this stage, Plaintiff has sufficiently alleged that the City at least should have known of the harassment in question, and that no remedial action was taken. Accordingly, Plaintiff states a valid claim for hostile work environment based on retaliation.

### C. Race Discrimination

Plaintiff alleges the City discriminated against her based on race because she is white, bringing claims under Title VII, the Texas Labor Code, and 42 U.S.C. §§ 1981 and 1983.

#### 1. Title VII Race Discrimination

Section 703(a)(1) of Title VII of the Civil Rights Act of 1964 provides that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to [one's] compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e–2(a) (2012). A plaintiff may establish claims of race discrimination through either direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). When a plaintiff relies on circumstantial evidence, as Plaintiff does here, the plaintiff may establish a prima facie case

by showing she "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) was replaced by someone outside of the protected class, or, in the case of disparate treatment, shows that other similarly situated employees were treated more favorably." *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004).

Plaintiff alleges Defendants discriminated against her based on race as a white individual, and "employees of the city were forced to resign or prematurely retire and were replaced by non-Whites (i.e. Hispanics and African Americans)." Docket no. 26 at 12. Plaintiff further alleges disparate treatment based on her race. *Id.* at 12–13.

Plaintiff sufficiently pleads the first two elements: she is a white individual and was qualified for her position. Plaintiff, however, fails to sufficiently state that she was subject to an adverse employment action because of her race. Further, Plaintiff acknowledges that she was replaced by another white employee.[1] Although Plaintiff states that Suarez indicated that he wanted more diversity among City employees and that other White employees were replaced by non-White employees, Plaintiff does not sufficiently allege she was constructively discharged due to race, nor does she allege more than a stray comment about diversity.

Plaintiff also fails to state a valid claim for disparate treatment. Plaintiff fails to adequately allege that other similarly situated employees outside of her protected class were treated more favorably. Plaintiff states that the alleged "problem employee" who complained

---

[1] Although this fact does not preclude her from meeting the fourth prong, *see Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 426 (5th Cir. 2000) (finding that replacement by someone within one's protected group "does not negate the possibility that the discharge was motivated [by] discriminatory reasons"), Plaintiff fails to allege that she was constructively discharged because of her race, or that she suffered any other adverse employment action due to her race. Plaintiff fails to allege there was a discharge motivated by discriminatory reasons.

against her was Hispanic and was only transferred through various City departments, and Plaintiff alleges that she was disciplined and treated less favorably. But Plaintiff fails to plausibly state how the other employee was treated more favorably, even before taking into consideration that their disciplinary problems might be entirely different. Moreover, Plaintiff only points to one other employee, and she fails to allege how employees outside of her protected class were broadly treated more favorably. Accordingly, Plaintiff fails to state a claim for race discrimination.

To the extent that Plaintiff might be bringing a claim for race discrimination based on hiring practices, Plaintiff fails to state a valid claim. As Defendants point out, Plaintiff did not assert discrimination based on hiring practices in her EEOC complaint. Plaintiff has failed to exhaust her administrative remedies to bring such a claim.

### 2. Texas Labor Code Race Discrimination

Under § 21.051 of the Texas Labor Code, an employer commits unlawful employment practices if because of race the employer:

> (1) fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE § 21.051.

For the same reasons discussed above under Plaintiff's Title VII race discrimination claims, Plaintiff fails to state a valid claim for race discrimination.

18

### 3. Section 1983 Race Discrimination

Under 42 U.S.C. § 1983, a claim of municipal liability "requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir. 2001) (citing *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978)). There is no *respondeat superior* liability for a municipality under Section 1983. *Bd. of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 403 (1997); *Monell*, 436 U.S. at 690. The unconstitutional conduct must be "directly attributable to the municipality through some sort of official action or imprimatur; isolated unconstitutional actions by municipal employees will almost never trigger liability." *Piotrowski*, 237 F.3d at 578. The municipal's policy or custom must cause the employee to violate a person's constitutional rights. *Fraire v. City of Arlington*, 957 F.2d 1268, 1277 (5th Cir. 1992).

Plaintiff alleges that, because Defendants discriminated against her based on race as a white individual, they denied her equal protection under the law. Docket no. 26 at 16. Defendants argue that Plaintiff fails to allege a formally adopted policy or custom that caused a violation of her constitutional rights. Docket no. 11 at 5.

Plaintiff sufficiently alleges the first two elements for a § 1983 race discrimination claim. Plaintiff alleges that Suarez, the City's Mayor, indicated that he wanted more diversity among the City's employees. Plaintiff further alleges that she was forced to resign, at least in part, because of her race, and that other White employees were replaced by non-White employees. Plaintiff, however, does not allege any official City policy or custom, nor do her allegations as to Suarez's desire for more diversity among employees and the replacing of White employees with

non-White employees indicate a "persistent, widespread practice . . . which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Piotrowski*, 237 F.3d at 579 (quoting *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)). The single comment by Suarez about diversity does not rise to the level of a persistent, widespread practice, and Plaintiff alleges no other facts to show such a practice. Accordingly, Plaintiff fails to state a valid claim for § 1983 race discrimination.

### D.  Age Discrimination

Under the ADEA, it is unlawful for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). To prove a disparate treatment claim pursuant to the ADEA, "[a] plaintiff must prove by a preponderance of the evidence . . . that age was the 'but for' cause of the challenged employer decision." *Gross v. FBL Fin. Servs. Inc.*, 557 U.S. 167, 177–78 (2009); *see also Cervantez v. KMGP Servs., Co. Inc.*, 349 F. App'x 4 (5th Cir. 2009).

In general, to establish a prima facie case of age discrimination, a plaintiff must demonstrate: (1) she belongs to the protected group of persons over the age of forty; (2) was qualified for her position; (3) was discharged; and (4) was replaced with someone younger or outside the protected group. *Cervantez v. KMGP Servs. Co. Inc.*, 349 F. App'x 4, 8 (5th Cir. 2009).

Plaintiff alleges Defendants forced her and other older employees to resign or prematurely retire, after which they were replaced by younger employees. Docket no. 26 at 9. Although Plaintiff resigned from her position, she claims she was constructively discharged,

despite her qualifications and experience in the position. Plaintiff specifically alleges she, at forty-five years old, was replaced by someone younger who was less experienced than she was. *Id.* At this stage in the case, Plaintiff sufficiently states a claim for age discrimination upon which relief can be granted.

### E.  Blacklisting

Plaintiff alleges that Defendants blacklisted her by intending to prevent her from engaging in or securing employment with another. Docket no. 26 at 18. Defendants argue that Plaintiff fails to demonstrate a waiver of sovereign immunity with respect to a blacklisting claim.

A person commits an offense under Texas Labor Code § 52.031 "if the person: (1) blacklists or causes to be blacklisted an employee; or (2) conspires or contrives by correspondence or any other manner to prevent an employee discharged by a corporation, company, or individual from procuring employment." TEX. LAB. CODE § 52.031(b).

No Texas court has decided whether § 52.031 provides for a private cause of action. *See Brim v. ExxonMobil Pipeline Co.*, 213 F. App'x 303, 305 (5th Cir. 2007); *Ragsdale v. Classroom Teachers of Dallas*, No. CIV.A.3:06CV863-H(BH), 2007 WL 426502, at *7 (N.D. Tex. Feb. 5, 2007). It is unclear whether a private individual such as Plaintiff can sue under the statute. Accordingly, because Plaintiff's blacklisting claim raises a novel issue of state law, the Court declines to exercise its supplemental jurisdiction over the blacklisting claim against the city.

In addition, assuming arguendo that there exists a private cause of action, it is unclear whether the city is immune under the doctrine of sovereign immunity. Section 52.031 of the Texas Labor Code imposes liability on a "person," which is broadly defined under Texas law to include a "corporation, organization, government or governmental subdivision or agency,

business trust, estate, trust, partnership, association, and any other legal entity." TEX. GOV'T CODE § 311.005. Despite the inclusion of "government or governmental subdivision or agency," however, "a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language." TEX. GOV'T CODE § 311.034. Further, "the use of 'person,' as defined by Section 311.005 to include governmental entities, does not indicate legislative intent to waive sovereign immunity unless the context of the statute indicates no other reasonable construction." *Id.* For this additional reason, the Court declines to exercise its supplemental jurisdiction over the blacklisting claim against the city.

## III.    Plaintiff's Claims Against Individual Defendants

Plaintiff brings claims for race discrimination and blacklisting against individual Defendants Villegas, Lambert, and Suarez. Defendants argue Plaintiff's claims should be dismissed for failure to state a claim.

### A.  Section 1983 Race Discrimination

Plaintiff alleges that Villegas, Lambert, and Suarez, acting under color of law, intentionally deprived her of equal protection of the laws and discriminated against her "on the basis of race denying her the same rights as are enjoyed by other employees" in violation of 42 U.S.C. §§ 1981 and 1983. Docket no. 26 at 13.

Defendants argue that Plaintiff's claims should be dismissed by raising the defense of qualified immunity. After a defendant asserts qualified immunity as a defense, the burden is on the plaintiff to negate qualified immunity. *Hyatt v. Thomas*, 843 F.3d 172, 177 (5th Cir. 2016). To determine if a plaintiff meets this burden, courts conduct a two-step inquiry. "First, [a plaintiff] must claim that the defendants committed a constitutional violation under current law.

Second, [s]he must claim that the defendants' actions were objectively unreasonable in light of the law that was clearly established at the time of the actions complained of." *Atteberry v. Nocona Gen. Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005) (internal citations omitted).

Plaintiff sufficiently alleges a constitutional violation by bringing a claim for racial discrimination that deprived her of equal protection under the law. Under 42 U.S.C. § 1981, Plaintiff may bring a claim for employment discrimination. *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989) ("Section 1983 provides an explicit remedy in damages which, with its limitations on municipal liability, Congress thought 'suitable to carry . . . into effect' the rights guaranteed by § 1981 as against state actors.") (citation omitted). Thus, Plaintiff alleges a violation of a clearly established constitutional right.

Plaintiff, however, does not sufficiently allege that Defendants' actions were objectively unreasonable. Even taking all of Plaintiff's allegations as true and construing those facts favorably to Plaintiff, she fails to meet the pleading standard to defeat a qualified immunity defense. Plaintiff does not allege Defendants fired her because of her race. *See Lott v. Kenedy Indep. Sch. Dist.*, 2009 WL 2843367, at *2 (W.D. Tex. Aug. 31, 2009) (denying motion to dismiss where plaintiff sufficiently alleged defendants "voted against contract renewal because Lott is white/Anglo and the trustees are Hispanic"). Plaintiff only states that Mayor Suarez commented that more diversity was needed in the City, and later that workers in protected classes were replaced by those "outside of their protected class." Plaintiff alleges that Defendants took adverse action against Plaintiff "because of her race" and she was forced to resign. To survive her heightened pleading requirements, Plaintiff must plead with "'factual detail and particularity,' not mere conclusory allegations." *Anderson v. Pasadena Indep. Sch. Dist.*, 184

F.3d 439, 443 (5th Cir. 1999); *Jackson v. Widnall*, 99 F.3d 710, 715–16 (5th Cir. 1996). By only pointing to one Defendant's comments—the comment made by Suarez about desired diversity—Plaintiff fails to allege objectively unreasonable actions carried out by the individual Defendants that would violate a clearly established constitutional right. Accordingly, Plaintiff fails to meet the heightened standard to survive a qualified immunity defense raised by the individual Defendants.

## B. Blacklisting

Plaintiff alleges that the individual Defendants blacklisted her by intending to prevent her from engaging in or securing employment with another. Docket no. 26 at 18. Defendants argue that Plaintiff fails to demonstrate that she is entitled to a private cause of action under § 52.031.

As discussed above, a person commits an offense under Texas Labor Code § 52.031 "if the person: (1) blacklists or causes to be blacklisted an employee; or (2) conspires or contrives by correspondence or any other manner to prevent an employee discharged by a corporation, company, or individual from procuring employment." TEX. LAB. CODE § 52.031(b). An offense is punishable by a fine ranging from $50 to $250, imprisonment for a period ranging from 30 to 90 days, or both the fine and imprisonment. *Id.* at § 52.031(c). As Defendants argue, no Texas court has decided whether § 52.031 provides for a private cause of action. *See Brim v. ExxonMobil Pipeline Co.*, 213 F. App'x 303, 305 (5th Cir. 2007); *Ragsdale v. Classroom Teachers of Dallas*, No. CIV.A.3:06CV863-H(BH), 2007 WL 426502, at *7 (N.D. Tex. Feb. 5, 2007). It is unclear whether a private individual such as Plaintiff can sue under the statute. Accordingly, because Plaintiff's blacklisting claim raises a novel issue of state law, the Court

declines to exercise its supplemental jurisdiction over the blacklisting claim against the individual Defendants. *See* 28 U.S.C. § 1367(c)(1).

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss (Docket no. 27) is hereby GRANTED IN PART and DENIED IN PART. Plaintiff's claims for discriminatory retaliation, retaliatory hostile work environment, and age discrimination survive. Plaintiff's claims for hostile work environment based on age discrimination, hostile work environment based on race discrimination, Title VII race discrimination, Texas Labor Code race discrimination, §§ 1981 and 1983 race discrimination, and blacklisting are DISMISSED WITHOUT PREJUDICE.

It is so ORDERED.

SIGNED this 7th day of December, 2017.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE